**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3871-17T1

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

CRAIG J. JONES,

     Defendant-Appellant.

_____

Submitted May 28, 2019 – Decided June 14, 2019

Before Judges Fasciale and Rose.

On appeal from Superior Court of New Jersey, Law Division, Essex County, Indictment Nos. 15-02-0251, 15-05-1167, 16-04-1350, 16-12-3308 and 16-12-3316.

Joseph E. Krakora, Public Defender, attorney for appellant (Marcia H. Blum, Assistant Deputy Public Defender, of counsel and on the brief).

Theodore N. Stephens, II, Acting Essex County Prosecutor, attorney for respondent (Frank J. Ducoat, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

After pleading guilty, defendant appeals from his conviction for third-degree possession of a controlled dangerous substance, N.J.S.A. 2C:35-10(a)(3). On appeal, defendant argues:

> THE EVIDENCE SEIZED IN THE WARRANTLESS SEARCH OF THE INTERIOR OF THE CAR AND IN THE ENSUING SEARCH CONDUCTED AFTER THE POLICE OBTAINED A WARRANT MUST BE SUPPRESSED BECAUSE THE INITIAL WARRANTLESS SEARCH WAS NOT VALID.

We affirm.

Defendant was stopped by police because one of his vehicle's brake lights was out, and he failed to use a turn signal when making a left turn. During the stop, the police searched the passenger compartment of the car without a warrant. They discovered heroin and cocaine in the console, which prompted them to obtain a warrant for the trunk, where they found additional drugs and a gun. Between February 2015 and December 2016, defendant was charged with gun and drug offenses in five Essex County indictments. In one of those indictments – Indictment No. 16-12-3308, a twelve-count indictment – defendant was charged with possession of a gun for unlawful purposes, N.J.S.A. 2C:39-4(a) and N.J.S.A. 2C:39-5(b); possession and possession with intent to distribute drugs, N.J.S.A. 2C:35-10(a) (three counts), N.J.S.A. 2C:35-5(a)(1)

(three counts), and N.J.S.A. 2C:35-7.1(a) (three counts); and possession of a gun while committing a drug offense, N.J.S.A. 2C:39-4.1(a). Defendant moved to suppress the evidence seized in connection with this indictment. The suppression hearing featured testimony from one of the officers who participated in the stop and searches, and the police-car dashboard-camera recording of the incident, which was narrated by the officer.

Judge Marysol Rosero concluded that the warrantless search of the vehicle could not be sustained on the basis of the document exception set forth in State v. Keaton, 222 N.J. 438 (2015) (allowing the police, under certain circumstances, to conduct a warrantless search of a car for the registration and insurance papers), but that it could be sustained under the automobile exception in State v. Witt, 223 N.J. 409 (2015). In addition, she concluded that the subsequent search of the trunk – which was conducted pursuant to a warrant that was obtained based on the drugs found in the console – was also lawful. Thus, the judge denied defendant's motion to suppress. Thereafter, defendant entered guilty pleas to various counts under the first four indictments, and the fifth indictment was dismissed under the plea agreement. Defendant was sentenced to an aggregate term of five years in prison, with a period of three and one-half years of parole ineligibility.

I.

"[A]n appellate court reviewing a motion to suppress must uphold the factual findings underlying the trial [judge]'s decision so long as those findings are supported by sufficient credible evidence in the record." State v. Elders, 192 N.J. 224, 243 (2007) (internal quotations marks and citation omitted). "An appellate court 'should give deference to those findings of the trial judge which are substantially influenced by his opportunity to hear and see the witnesses and to have the "feel" of the case, which a reviewing court cannot enjoy.'" Id. at 244 (quoting State v. Johnson, 42 N.J. 146, 161 (1964)). Thus, we "should not disturb the trial [judge]'s findings merely because '[we] might have reached a different conclusion were [we] the trial tribunal' or because 'the trial [judge] decided all evidence or inference conflicts in favor of one side' in a close case." Ibid. (quoting Johnson, 42 N.J. at 162). A trial judge's findings "should be disturbed only if they are so clearly mistaken 'that the interests of justice demand intervention and correction.'" Ibid. (quoting Johnson, 42 N.J. at 162). Only when that is the case should we "appraise the record as if [we] were deciding the matter at inception and make [our] own findings and conclusions." Ibid. (quoting Johnson, 42 N.J. at 162). We review a trial judge's legal conclusions under a de novo standard. See State v. Hreha, 217 N.J. 368, 382 (2014).

## II.

The Fourth Amendment to the United States Constitution and Article I, paragraph 7 of the New Jersey Constitution protect individuals from unreasonable searches and seizures. U.S. Const. amend. IV; N.J. Const. art. I, ¶ 7. When a police officer stops a motor vehicle and detains its occupant, it is a "seizure" under both the United States Constitution and the New Jersey Constitution. Delaware v. Prouse, 440 U.S. 648, 653 (1979); State v. Pitcher, 379 N.J. Super. 308, 313 (App. Div. 2005). A motor vehicle stop is unconstitutional unless "there is at least articulable and reasonable suspicion that a motorist is unlicensed or that an automobile is not registered, or that either the vehicle or an occupant is otherwise subject to seizure for violation of law." Prouse, 440 U.S. at 663.

"[P]olice officers must obtain a warrant from a neutral judicial officer before searching a person's property, unless the search 'falls within one of the recognized exceptions to the warrant requirement.'" State v. DeLuca, 168 N.J. 626, 631 (2001) (quoting State v. Cooke, 163 N.J. 657, 664 (2000)). Warrantless searches are "presumptively unreasonable," and thus, "the State bears the burden of proving the validity of a warrantless search." State v. Cushing, 226 N.J. 187, 199 (2016). Generally, evidence seized in violation of the warrant requirement

must be suppressed.  Mapp v. Ohio, 367 U.S. 643 (1961); In Interest of J.A., 233 N.J. 432, 456-57 (2018).  "To be valid, a warrantless search must fit into a recognized exception to the warrant requirement."  Cushing, 226 N.J. at 199.

Lieutenant Nicholas Polidoro, one of the officers who stopped defendant, testified at the suppression hearing.  He testified that as soon as he approached the passenger side of the car, he noticed that defendant was "fidgety, nervous, [and] sweating."  He also detected a "slight odor of raw marijuana inside the vehicle."  Polidoro and his partner, Officer Lutz, asked defendant about the "remnants of tobacco" in a plastic bag that was on the car floor.  Polidoro testified that, in his experience, this signaled that a cigar was emptied so that it could be filled with marijuana.  Defendant responded that the tobacco was from the cigars that he smokes.  Lutz asked defendant about a prescription bottle on the front seat of the car that did not appear to be in defendant's name.  Defendant said that someone else gave it to him and that it was a "[w]eight gainer."  Lutz asked defendant for his driver's license, insurance, and registration, and scanned the license.  He found that defendant had an active warrant, so defendant was arrested and placed in handcuffs.  In the dashboard-camera video, Lutz is heard saying "thirty-five," which Polidoro explained is a reference to the chapter of

6

the criminal code that deals with drugs, as Lutz suspected that there were drugs in the car.

Prior to conducting the search, Polidoro told defendant that the normal procedure after an arrest is to impound the car, but that defendant's warrant could be resolved in as little as thirty minutes if he paid the $250 fine, and that he would probably be released. Polidoro suggested that since defendant would likely be free soon, rather than impound the car, which defendant would have to pay to retrieve, Polidoro could move it to a nearby municipal parking lot, where defendant could later reclaim it. Defendant allowed Polidoro to move his car into the lot. Polidoro testified that he had to go "back inside the vehicle," to "retrieve the documents again." He referred to the registration and insurance. But he previously testified that defendant never gave Lutz the vehicle registration, and then later said that he could not see the documents that defendant gave to Lutz.

After defendant was arrested, but prior to Polidoro moving the car, Polidoro entered the vehicle and began searching in the center console – to find the registration and confirm that the car was registered in defendant's name – where he found heroin and cocaine. He then extended the search beyond the console, but did not find any other contraband in the passenger compartment.

The police then obtained a warrant for the trunk, where they found a handgun, prescription pills, and a "cylinder" containing "marijuana residue." Polidoro could not confirm if the "residue" was ever tested, but did acknowledge that the indictment did not contain any marijuana-related charges.

The judge found Polidoro – the State's only witness – credible and highlighted his "candor" and "inherent believability." She first addressed whether the officers conducted a lawful traffic stop, and concluded that they had. She then concluded that the officers complied with the law in asking defendant to step out of his vehicle during the stop. Next, the judge discussed whether Polidoro lawfully conducted a search to retrieve defendant's insurance card and registration, and concluded that the document exception did not apply, see Keaton, 222 N.J. 438, but that the "automobile exception" did apply as the officers had probable cause to search defendant's vehicle when they effectuated the motor vehicle stop and smelled marijuana. See Witt, 223 N.J. 409. She said that "even though . . . the driver's license exception did not authorize the search, the officers had probable cause to search the vehicle for [controlled dangerous substances (CDS)] based on the alleged smell of marijuana coming from [d]efendant's vehicle." She also opined that "[d]efendant's open warrant . . . further gave . . . rise to probable cause to search the vehicle." Thus, she

sustained the warrantless search under <u>Witt</u>, explaining that the "alleged smell of marijuana coming from [d]efendant's vehicle, the loose tobacco[,] and the presence of the prescription bottle[,] which was not under . . . [d]efendant's name and . . . was right there in plain view . . . of the officers" coupled with defendant's nervous manner when asked about drugs in the car, was sufficient for probable cause.  Finally, the judge concluded that the search of the trunk – conducted pursuant to a warrant obtained based on the drugs found in the console – was also lawful.

Here, the police conducted two searches – one of the passenger compartment and one of the trunk.  Defendant argues that because the State "failed to establish that the initial warrantless search of the passenger compartment fell within a recognized exception, the evidence seized in that search should have been suppressed."  Under the exclusionary rule, "evidence obtained in violation of the Fourth Amendment cannot be used in a criminal proceeding against the victim of the illegal search and seizure."  <u>United States v. Calandra</u>, 414 U.S. 338, 347 (1974); <u>accord</u> <u>State v. Lee</u>, 190 N.J. 270, 277-78 (2007).  And, because the drugs that were seized during the initial search served as the basis of probable cause to obtain the warrant, defendant maintains that "the evidence seized under color of the warrant must be suppressed as fruit

of the poisonous tree." "The exclusionary prohibition extends as well to the indirect as the direct products of such invasions." Wong Sun v. United States, 371 U.S. 471, 484 (1963); accord State v. Shaw, 213 N.J. 398, 413 (2012).

In Witt, our Supreme Court opined that warrantless searches and seizures of automobiles were permitted when there was probable cause to believe that there was contraband inside and the police action was prompted by "unforeseeability and spontaneity[.]" 223 N.J. at 447 (quoting State v. Alston, 88 N.J. 211, 233 (1981)). "[T]he exigent circumstances that justify the invocation of the automobile exception are the unforeseeability and spontaneity of the circumstances giving rise to probable cause, and the inherent mobility of the automobile stopped on the highway." Alston, 88 N.J. at 233 (citation omitted). The judge relied on the dashboard-camera recording and Polidoro's testimony to establish probable cause for the initial warrantless search.

Defendant contends that Polidoro embellished his testimony with questionable "facts" that were outside of the scope of the dashcam-recording. For instance, Polidoro testified that he could smell raw marijuana emanating from the vehicle. This was a critical discovery as "the smell of marijuana itself can suffice to furnish probable cause" for a warrantless search of a motor vehicle. State v. Myers, 442 N.J. Super. 287, 297 (App. Div. 2015). The judge

also relied on this claim when she approved the warrantless search. She highlighted that the smell of marijuana had "become familiar to [Polidoro] over the course of the [eighteen] years of service as an officer."

In State v. Nishina, the officer smelled marijuana on the defendant, discovered drug paraphernalia on the defendant, and observed a plastic bag in plain view in the vehicle. 175 N.J. 502, 517 (2003). Our Supreme Court concluded that those facts "amply supplied the officer with probable cause to suspect that drugs would be found in [the] defendant's vehicle." Id. at 518. The State draws a parallel between Nishina and this case and explains that here, Polidoro approached defendant's vehicle, observed the contents that were in plain view, discovered loose tobacco and prescription medication that did not belong to defendant, and smelled raw marijuana. As such, the State argues that these facts also "amply supplied [Polidoro] with probable cause to suspect that drugs would be found in defendant's vehicle." Ibid.

The judge found probable cause based on Polidoro's claim coupled with "the loose tobacco, and the presence of the prescription bottle, which was not under . . . [d]efendant's name and . . . was right there in plain view . . . of the officers." She also stated that defendant's warrant – which defendant denied existed – further gave rise to probable cause to search the vehicle. Defendant

disputes that this is sufficient to establish probable cause and not, at a minimum, reasonable suspicion.

In sum, defendant asks this court to review the cold record and make its own fact-finding regarding Polidoro's credibility. "Appellate courts should defer to trial [judges'] credibility findings that are often influenced by matters such as observations of the character and demeanor of witnesses and common human experience that are not transmitted by the record." State v. Kuropchak, 221 N.J. 368, 382 (2015) (quoting State v. Locurto, 157 N.J. 463, 474 (1999)). "Thus, appellate review is limited to 'whether the findings made could reasonably have been reached on sufficient credible evidence present in the record.'" Id. at 382-83 (quoting Johnson, 42 N.J. at 162). "'This involves consideration of the proofs as a whole,' and not merely those offered by the defendant." Id. at 383 (quoting Johnson, 42 N.J. at 162). "Any error or omission shall be disregarded by the appellate court unless it is of such a nature as to have been clearly capable of producing an unjust result[.]" Ibid. (alteration in original) (quoting R. 2:10-2). "Occasionally, however, a trial [judge]'s findings may be so clearly mistaken 'that the interests of justice demand intervention and correction.'" Ibid. (quoting Johnson, 42 N.J. at 162).

> When the reviewing court is satisfied that the findings
> and result meet this criterion, its task is complete and it

should not disturb the result, even though it has the feeling it might have reached a different conclusion were it the trial tribunal. That the case may be a close one or that the trial court decided all evidence or inference conflicts in favor of one side has no special effect.

[Locurto, 157 N.J. at 471 (quoting Johnson, 42 N.J. at 162).]

Here, the judge's findings were not so clearly mistaken "that the interests of justice demand intervention and correction." Kuropchak, 221 N.J. at 383 (quoting Johnson, 42 N.J. at 162). As such, the evidence seized in the warrantless search should not be suppressed, which would also mean that the evidence seized from the trunk also should not be suppressed. The warrantless search was permitted as the totality of the circumstances evinces that there was probable cause to believe that contraband was inside the vehicle, and the circumstances were unforeseeable and spontaneous. See Witt, 223 N.J. at 447 (quoting Alston, 88 N.J. at 233).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3871-17T1